1      UNITED STATES DISTRICT COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3   Before The Honorable Peter H. Kang, Magistrate Judge

4

5   UNITED STATES OF AMERICA,      )
                                   )
6            Plaintiff,            )
                                   )
7   vs.                           )   No. CR 25-00012-RFL-1
                                   )
8   ALEXANDER CHARLES BECKMAN      )
    and VALERIE LAU BECKMAN,       )
9                                  )
             Defendants.           )
10  _____)

11                             San Francisco, California
                               Thursday, January 23, 2025
12

13  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
        RECORDING 11:20 - 11:41/11:43 - 12:05 = 43 MINUTES
14

15  APPEARANCES:

16  For Plaintiff:
                               United States Department of
17                                Justice
                               United States Attorney's
18                                Office for the Northern
                                  District of California
19                             450 Golden Gate Avenue
                               Eleventh Floor
20                             San Francisco, California
                                  94102
21                     BY:  PATRICK K. O'BRIEN, ESQ.

22

23

24

25           (APPEARANCES CONTINUED ON NEXT PAGE)

1  APPEARANCES:  (Cont'd.)

2  For Defendants:
                              Latham & Watkins LLP
3                             505 Montgomery Street
                              Suite 2000
4                             San Francisco, California
                                94111
5                    BY:  SCOTT D. JOINER, ESQ.

6                             Federal Public Defender
                              450 Golden Gate Avenue
7                             Nineteenth Floor
                              San Francisco, California
8                                94102
                     BY:  ELIZABETH M. FALK, ESQ.

9

10 For Pretrial Services:
                              United States Pretrial
11                              Services Agency
                              450 Golden Gate Avenue
12                            Suite 18-5497
                              San Francisco, California
13                               94102
                     BY:  ALLYSE JOHNSON
14
   Transcribed by:          Echo Reporting, Inc.
15                          Contracted Court Reporter/
                            Transcriber
16                          echoreporting@yahoo.com

17

18

19

20

21

22

23

24

25

1 Thursday, January 23, 2025                    11:20 a.m.

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4          THE COURT:  Again for me.

5          MR. JOINER:  J-O-I-N-E-R.

6          THE COURT:  Joiner.  Okay.  Thank you.  Good

7 morning.

8          MS. JOHNSON:  Good morning, your Honor.  Allyse

9 Johnson, U.S. Pretrial.

10          THE COURT:  Good morning.

11          Mr. Beckman, we're here today for an initial

12 appearance on an indictment.

13     That's correct, right?

14          MR. O'BRIEN:  Yes, your Honor, and at the outset,

15 the Government would move to unseal the case and all

16 documents in the case, except for the indictment, which your

17 Honor is aware of from the Government's submission.  There

18 will be some minor redactions to the indictment.

19          THE COURT:  Okay.  So has the redacted indictment

20 been posted?

21          MR. O'BRIEN:  It has not, your Honor, and we can

22 talk about this after.  There was an issue with the copying

23 of the original indictment, not having a color copy of a

24 picture that was filed, so what I would propose is

25 submitting a version of the redacted indictment that your

1 Honor reviewed last night with the color photo in it for

2 posting and filing on the docket.

3     THE COURT:  Okay.  All right.  Mr. Joinder, any

4 objection to that procedure?

5     MR. JOINDER:  No objection, your Honor.

6     THE COURT:  Okay.  So granted.  The case is

7 unsealed, but for the indictment, which will be filed and

8 posted in its redacted form once it's all squared away by

9 the Government.

10     MR. O'BRIEN:  Thank you, your Honor.

11     THE COURT:  Okay.  So, first, Mr. Beckman, could

12 you please state your full true name for the record.

13     MR. BECKMAN:  Alexander Charles Beckman.

14     THE COURT:  Okay.  And how old are you, sir?

15     MR. BECKMAN:  Forty-one.

16     THE COURT:  Okay.  You're here today in this court

17 because a grand jury sitting in this district has returned

18 an indictment charging you with certain felony offenses.

19     Everybody has a copy of the indictment?

20     MR. JOINDER:  Yes, your Honor.

21     THE COURT:  Okay.  The purpose of the hearing

22 today is to advise you of the charges contained in the

23 indictment, the potential penalties the charges carry,

24 advise you of some of your constitutional rights, determine

25 if you intend to retain counsel or if you're eligible for

the appointment of counsel, set some further hearings in the case, and then make a decision about whether you would be released on bond or detained pending resolution of your case.

So, first, you have the right to remain silent.  You're not required to make any statement.  If you have made a statement, you're not required to say anything more.  If you start to make a statement, you may stop at any time.  You may consult with your attorney before any questioning, and you may have an attorney present during any questioning.  Because you have a right not to make a statement, any statement that you do make, other than to your own attorney, may be used against you.

Do you understand your right to silence?

MR. BECKMAN:  I do.

THE COURT:  You also have the right to an attorney in this case.  You have a right to be represented by that attorney during all stages of the case, both in court and out of court.  You have a right to have that attorney with you during any questioning by authorities.  You have a right to retain an attorney of your own choosing, but, if you can't afford one, the Court will appoint one to represent you, at no cost to you.

Do you understand your right to an attorney?

MR. BECKMAN:  I do.

1          THE COURT:  Okay.  Mr. Joiner, you're privately

2 retained?

3          MR. JOINDER:  I am, your Honor.

4          THE COURT:  Okay.  I don't want to make any

5 assumptions.  Is the Defendant a U.S. citizen?

6          MR. JOINDER:  He is, your Honor.

7          THE COURT:  Okay.  Turning to the indictment, as I

8 said, it charges you with a number of criminal offenses.

9          So, Mr. O'Brien, why don't you go ahead and

10 summarize the charges and the maximum penalties.

11          MR. O'BRIEN:  Yes, your Honor.  There are 25

12 counts in the indictment.  Mr. Beckman is charged with 23 of

13 the 25 counts.  Counts one through nine charge violations of

14 Title 18, United States Code Section 1343, wire fraud, and

15 counts 10 and 11 charge violations of Title 18, United

16 States Code Section 1349, conspiracy to commit wire fraud.

17     The maximum penalties for counts one through 11 are 20

18 years' imprisonment, a $250,000 fine or twice the gross

19 pecuniary gain or loss from the offense, three years of

20 supervised release, a $100 special assessment, restitution,

21 and forfeiture, and that's per count, those maximum

22 penalties.

23     Counts 12 and 14 charge violations of Title 15, United

24 States Code Section 78j(b) and 78f(f), and Title 17, Code of

25 Federal Regulations Section 240.10b-5, securities fraud.

The maximum penalties per count are 20 years' imprisonment, a $5,000,000 fine, three years of supervised release, a $100 special assessment, restitution, and forfeiture.

Count 15 charges a violation of Title 18, United States Code Section 371, conspiracy to commit securities fraud. The maximum penalties are five years' imprisonment, $250,000 fine, three years of supervised release, a $100 special assessment, restitution, and forfeiture.

Count 16 charges a violation of Title 18, United States Code Section 1349, conspiracy to commit bank fraud. The maximum penalties for that count are 30 years' imprisonment, a $1,000,000 fine, five years of supervised release, and a $100 special assessment, restitution, and forfeiture.

Count 17 charges a violation of Title 18, United States Code Section 1014, false statement to a bank or other federally insured institution. The maximum penalties are 30 years' imprisonment, a $1,000,000 fine, five years of supervised release, a $100 special assessment, restitution, and forfeiture.

Count 18 charges a violation of Title 18, United States Code Section 1957, engaging in monetary transactions and property derived from specified unlawful activity. The maximum penalties are 10 years' imprisonment, $250,000 fine or twice the amount of the criminally derived property involved in the transaction, three years of supervised

1  release, $100 special assessment, restitution, and

2  forfeiture.

3      Counts 19 through 24 charge violations of Title 18,

4  United States Code Section 1028A, aggravated identity theft.

5  The minimum penalties per count are that there's a mandatory

6  minimum prison term of two years that must be consecutive to

7  any other term of imprisonment imposed on the person under

8  any other provision of law, except the Court has discretion

9  to impose concurrent sentences only with another term of

10 imprisonment that is imposed by the Court at the same time

11 on that person for an additional violation of Title 18,

12 United States Code Section 1028A.

13     The other maximum penalties are a $250,000 fine, three

14 years' supervised release, a $100 special assessment, and

15 that's per count for the aggravated identity theft counts.

16         THE COURT:  Mr. Beckman, do you understand the

17 charges against you and the maximum penalties you face?

18         MR. BECKMAN:  I do.

19         THE COURT:  Okay.  Mr. Joiner, do you waive formal

20 reading of the indictment?

21         MR. JOINDER:  We do, your Honor.

22         THE COURT:  And are you prepared to enter a plea

23 on behalf of client at this time?

24         MR. JOINDER:  Yes, your Honor, not guilty.

25         THE COURT:  Plea of not guilty on the charges in

1 the indictment will be entered.  The record will reflect the

2 Defendant has been arraigned on the indictment.

3     Pursuant to the Due Process Protection Act, counsel for

4 the Government are reminded of their obligations, pursuant

5 to Brady v. Maryland and its progeny, to disclose material

6 that is favorable to the Defendant and material either to

7 the Defendant's guilt or punishment.  The failure to do so

8 in a timely manner may result in dismissal of the indictment

9 or information, dismissal of individual charges, exclusion

10 of government evidence or witnesses, or any other remedy

11 that is just under the circumstances.

12     Mr. O'Brien, does the Government acknowledge those

13 duties?

14          MR. O'BRIEN:  Yes, your Honor.

15          THE COURT:  Have the parties discussed detention?

16 What's the Government's position on detention?

17          MR. O'BRIEN:  Your Honor, we've discussed

18 conditions of release.  I believe Mr. Joiner has a copy of

19 proposed release conditions.  They would involve a

20 $1,000,000 secured bond to be posted within two weeks or a

21 date that we set with your Honor.

22     There would be restrictions on travel.  The Government

23 obtained the Defendant's passport this morning, pursuant to

24 a search, and we will turn those over to Pretrial Services.

25 There would be supervision by Pretrial Services, and a

1  restriction that the Defendant cannot speak to his

2  co-Defendant outside the presence of counsel about the case.

3  There are some additional conditions on the form as well,

4  but that's me summarizing the highlights there.

5           THE COURT:  Okay.  Has Pretrial seen those

6  conditions?

7           MS. JOHNSON:  No, your Honor.

8           THE COURT:  Okay.  So why don't you make sure

9  Pretrial has a chance to review and comment.

10      The form is filled out slightly incorrectly.  I'm going

11  to move the "million dollars" to under the box for secured

12  bond, because this box is when people are on personal

13  recognizance.

14           MR. O'BRIEN:  Okay.  I apologize, your Honor.  I

15  have a blank form if your Honor prefers that.

16           THE COURT:  The parties are okay?  We'll do it by

17  hand?

18           MR. O'BRIEN:  Yes, that's great.

19           MR. JOINDER:  Absolutely, your Honor.

20           THE COURT:  All right.  And, also, I assume one of

21  the conditions is that -- right -- the Defendant must not

22  change telephone numbers without prior approval.  There's no

23  telephone number listed.  Do you have a telephone number?

24           MR. O'BRIEN:  Do you want to put the telephone

25  number on, Scott?

1        MR. JOINDER:  We can add that, your Honor.

2        THE COURT:  Okay.  Does Pretrial have any comments

3 or additions to the conditions, the bond form?

4        MS. JOHNSON:  Not right now, your Honor.

5        MR. O'BRIEN:  And, your Honor, on that point, what

6 I would propose is we're going to -- the Government will ask

7 to come back in roughly two weeks, and if there any changes

8 in circumstances or concerns about what's going on, then we

9 may seek the Court's permission to revisit some of these.

10        THE COURT:  Okay.  All right.

11     So, Mr. Beckman, the parties have agreed to release you

12 under certain conditions, which I want to go over with you,

13 just to make sure you fully understand them.

14     So, most -- well, first of all, not most importantly --

15 first of all, you're signing onto what's called a "secured

16 bond" of a million dollars, which will be secured by

17 property located at 3877-3879 Jackson Street in San

18 Francisco.

19     Is that -- that's your residence?

20        MR. BECKMAN:  Yes.

21        THE COURT:  Okay.  And you understand, by posting

22 what's called a "secured bond," right, you're posting that

23 property as -- essentially to assure your compliance with

24 the rest of your conditions.

25     Do you understand that?

1          MR. BECKMAN:  I do.

2          THE COURT:  All right.  So, if you violate even a

3  single condition of release, the Government has the option

4  to file a motion with the Court to forfeit the bond, and

5  they could ask for up the full amount, plus interest and

6  costs.  It could be more than that.

7      Do you understand that?

8          MR. BECKMAN:  Yes.

9          THE COURT:  It's a very financial commitment

10  you're making.  Do you understand all that?

11          MR. BECKMAN:  I do.

12          THE COURT:  All right.  The conditions that are

13  proposed are that the Defendant must appear at all

14  proceedings, as ordered by the Court, and must surrender for

15  service of any sentence imposed.

16      The Defendant must not commit any federal, state, or

17  local crime.

18      The Defendant must not harass, threaten, intimidate,

19  injure, tamper with, or retaliate against any witness,

20  victim, informant, juror, or officer of the Court, or

21  obstruct any criminal investigation.

22      The Defendant must surrender any passports or other

23  travel documents to Pretrial Services by January 23rd, 2025,

24  which I think has happened or will have happened, and must

25  not apply for other passports or travel documents.

1     The Defendant must not possess any firearm, destructive

2 device, or other dangerous weapon.  The Defendant must not

3 use alcohol to excess, and must not use or possess any

4 narcotic or other controlled substance without a legal

5 prescription.

6     The Defendant must have no contact, directly or

7 indirectly, with any co-defendant outside of the presence of

8 counsel.

9     The Defendant must not change residence or telephone

10 number without prior approval of Pretrial Services, and,

11 just to be clear, your address is 3877-3879 on Jackson

12 Street in San Francisco?

13          MR. BECKMAN:  Yes.

14          THE COURT:  All right.  And we're going to fill in

15 your phone number.

16     The Defendant must comply with the following location

17 restrictions.  The Defendant must not travel outside of the

18 Northern District of California, and the bond form has a map

19 of what counties of California constitute the Northern

20 District of California, and you'll have that.

21     So do you understand all those proposed conditions for

22 your release?

23          MR. BECKMAN:  I do.

24          THE COURT:  All right.

25          MR. O'BRIEN:  Your Honor, the one thing I just

1  wanted to flag is, I thought I had -- or the box was already

2  checked regarding pretrial supervision.  There is some role

3  for Pretrial here in terms of having the passports, and also

4  changing address without the prior approval of Pretrial.

5      I don't envision that it's going to be anything

6  significantly more burdensome than what's already

7  contemplated to have pretrial supervision here, but I wanted

8  to flag that.  That was my original intention, was to have

9  pretrial supervision here.  It's the box under the witness

10 tampering, so it's the fourth box down.

11         THE COURT:  So, with the parties' consent, I will

12 check that box.

13         Mr. Joiner?

14         MR. JOINDER:  I'm sorry, your Honor?

15         THE COURT:  With the parties' consent, I'll check

16 the box adding the condition:

17         "The Defendant must submit to

18         supervision by Pretrial Services, and

19         must report immediately upon release and

20         thereafter as direct to Pretrial

21         Services."

22         MR. JOINDER:  Well, I talked with Mr. O'Brien

23 about this, your Honor.  I don't think pretrial supervision

24 is necessary.  Having them hold the passports makes complete

25 sense, but Mr. Beckman is represented by experienced

1 counsel, and I don't see a need for that, especially given

2 his ties to the community.

3        MR. O'BRIEN:  So, your Honor, the one thing I

4 would say on that is that this case has significant

5 instances of deception and uses of other people's

6 identities, false e-mail accounts, false documents, and I do

7 think it's appropriate, given the Defendant's resources, the

8 seriousness of the charges, and the conduct that I just laid

9 out, that there should be the additional condition that

10 pretrial supervision is required.

11        THE COURT:  I mean, Mr. Joiner, the level and

12 intensity of supervision by Pretrial Services is something

13 that you can certainly discuss with them as appropriate.  I

14 mean, every case is handled on its own facts.

15        MR. JOINDER:  Certainly, your Honor.

16        THE COURT:  And so I'll leave it up to you to talk

17 with them about what is appropriate in terms of the kind of

18 supervision that they would give, but, since they're holding

19 his passport, and there are location restrictions and all

20 that, I do think some level of supervision, at least on the

21 record, is appropriate, also because Pretrial acts as an arm

22 of the Court, in helping the Court understand what's going

23 on with the Defendant through the pretrial.

24        MR. JOINDER:  Certainly, your Honor.  Happy to

25 have those conversations.

1          THE COURT:  Okay.  So, again, having said that,

2    I'm going to order that we have that condition.  Defendant

3    must submit to supervision by Pretrial Services, and must

4    report immediately upon release and thereafter as directed

5    to Pretrial Services.

6        So, with those -- and it's Mr. Beckman -- do you

7    understand the conditions for your release?

8          MR. BECKMAN:  I do.

9          THE COURT:  Okay.  Just as a practical matter,

10   because I know from the indictment the Defendant and the

11   Co-Defendant are spouses, how does the "not speaking with

12   your Co-Defendant" work in a case like this?

13          MR. O'BRIEN:  Your Honor, I think it's just a

14   commitment from the Defendant that he's not going to talk

15   about the case, outside the presence of lawyers, with his

16   wife, and it may be difficult to enforce, but he needs to

17   commit to that, to the Court.

18          THE COURT:  Mr. Beckman, you understand that

19   that's one of your conditions of release?

20          MR. BECKMAN:  I do.

21          THE COURT:  Okay.  And so, as I said, if it comes

22   out later that you've been speaking about the case with your

23   Co-Defendant outside the presence of counsel, that would be

24   a violation of your terms of release.

25          MR. BECKMAN:  I understand.

1          THE COURT:  Okay.  And your release could be

2   revoked, more conditions imposed, different conditions

3   imposed.  You could be -- you know, again, release could be

4   revoked, and the Court could decide at that point that you

5   shouldn't be released, because you've shown an inability to

6   follow the conditions.

7       Do you understand those potential penalties?

8          MR. BECKMAN:  Yes.

9          THE COURT:  Okay.  All right.  Let's go ahead and

10  get this executed.

11      While they're doing that, Mr. O'Brien, has the

12  Government done any diligence to determine if there's

13  sufficient equity in the residence to satisfy that secured

14  bond?

15         MR. O'BRIEN:  I believe there is, your Honor.

16         THE COURT:  Okay.  With that representation --

17  I'll accept that representation.

18      Okay.  So, one last chance.  Any further comments,

19  edits to the bond form from the Government?

20         MR. O'BRIEN:  No, your Honor.

21         THE COURT:  From Pretrial?

22         MS. JOHNSON:  No, your Honor.

23         THE COURT:  From the defense?

24         MR. JOINDER:  No, your Honor.

25         THE COURT:  All right.  So, Mr. Beckman, is this

1 your signature on the bond form?

2          MR. BECKMAN:  It is.

3          THE COURT:  Okay.  You fully understand, and read

4 the bond form before signing onto it?

5          MR. BECKMAN:  I did.

6          THE COURT:  So you agree these are the conditions

7 you're going to follow?

8          MR. BECKMAN:  Yes.

9          THE COURT:  Do I have your promise you're going to

10 follow your conditions of release?

11          MR. BECKMAN:  I promise, yes.

12          THE COURT:  So I'm going to sign off on the bond

13 form.

14     I gave the Brady admonishment?

15          MR. O'BRIEN:  Yes, your Honor.

16          THE COURT:  We need to set dates, in front of who,

17 Judge Lin?

18          MR. O'BRIEN:  Your Honor, it's in front of Judge

19 Lin, the District Court judge, your Honor.

20     In this particular case, I'm open to setting a date in

21 front of Judge Lin, but I think it makes sense to also set a

22 date to come back for, probably, your Honor, even though you

23 won't be the duty judge in February, if you're signing the

24 bond, for a bond status hearing, to the extent there's any

25 issue with the security, and also just to confirm identity

1  of counsel, certainly for Mr. Beckman's Co-Defendant, who is

2  going to have an Assistant Federal Public Defender today.

3        Just for the record, I have flagged some circumstances

4  for Mr. Joiner regarding the issues regarding his law firm

5  in this case, and so we may discuss those at that point as

6  well.

7            MR. JOINDER:  And just to be clear, your Honor,

8  I've been informed the Government has no objection to me

9  representing Mr. Beckman in this proceeding, during the

10 initial stages.

11           MR. O'BRIEN:  That's correct, your Honor.

12           THE COURT:  Okay.  Well, a couple weeks.  So,

13 thinking first or second week of February?  Is that what

14 you're -- or later?

15           THE CLERK:  We already have a criminal matter on

16 February 10th at 2:00, if you wanted another one.

17           THE COURT:  Come back on a criminal calendar on

18 February 10th?

19           MR. O'BRIEN:  That would work for the Government,

20 your Honor.

21           MR. JOINDER:  For the defense as well, your Honor.

22           THE COURT:  Okay.  So next hearing is set before

23 me for February 10th at 2:00 o'clock, where we'll discuss

24 status regarding the bond terms, and status regarding

25 defense counsel, I guess, and working out those issues.

1           THE CLERK:  And then how far out for Judge Lin?

2           THE COURT:  Do you want to set a date with Judge

3 Lin, just to have that on calendar?

4           MR. O'BRIEN:  Why don't we set it when we come

5 back.

6           THE COURT:  Come back in a couple weeks.

7           MR. O'BRIEN:  In the interim, your Honor, I've

8 talked to Mr. Joiner about excluding time for effective

9 preparation of counsel, planning to start making some

10 initial directions in discovery.

11      There will be a need for a protective order in this

12 case, and we have a stipulation to exclude time from today's

13 date, January 23rd, 2025, through February 10th, 2025.

14          THE COURT:  For the record, I assume discovery is

15 going to be voluminous in this case?

16          MR. O'BRIEN:  That's correct, your Honor.

17          THE COURT:  Okay.

18          THE CLERK:  Okay.  Thank you.

19          THE COURT:  I've been provided the parties'

20 stipulation to exclude time from today, January 23rd, until

21 February 10th, 2025, on the grounds that it's necessary for

22 effective preparation.  Given the representation as to the

23 voluminous nature of discovery, I grant the order.

24      Okay.  Anything further from the Government?

25          MR. O'BRIEN:  Your Honor, the only thing is just

to revisit that question about the redacted indictment.

What the Government intends to do is to apply the redactions

to the version with the color photograph that your Honor

said were okay last night, and that defense counsel has also

agreed to, and submit that filing with the Court for that to

be the -- or for that to be the publicly available version

of the indictment.

THE COURT:  The redacted version?

MR. O'BRIEN:  Yes.

THE COURT:  Not unredacted, the redacted version?

MR. O'BRIEN:  Yes, yes.  Right, right.

THE COURT:  The public version.  Okay.

Is that okay, Mr. Joiner?

MR. JOINDER:  Yes, your Honor.

THE COURT:  All right.  With that, anything

further?  Anything else from the Government?

MR. O'BRIEN:  No, your Honor.

THE COURT:  Anything else from the defense?

MR. JOINDER:  No, thank you, your Honor.

THE COURT:  Anything further from Pretrial?

MS. JOHNSON:  Yes.  We ask that the Defendant

report to our office on the 18th floor once he's released

from marshals.

THE COURT:  Okay.  So, procedurally, Mr. Beckman,

you'll be out-processed here, I guess, right, not at Santa

1 Rita?

2          MR. O'BRIEN:  Correct, your Honor.

3          THE COURT:  And then, once you're out-processed on

4 20 -- is where they are -- you'll go down to -- 18?

5          MS. JOHNSON:  Yes, your Honor.

6          THE COURT:  Eighteen, and meet with Pretrial

7 before you head out.  And then, once you're out-processed

8 and out, you'll be released subject to all the conditions

9 that we went through.  Do you understand all that?

10          MR. BECKMAN:  Yes.

11          THE COURT:  Okay.  So you are remanded to the

12 custody of the U.S. Marshal for the purposes of

13 out-processing, and they're now going to let you be

14 released, and we're adjourned.

15          MR. JOINDER:  Thank you, your Honor.

16          MR. O'BRIEN:  Thank you, your Honor.

17          THE CLERK:  We're off the record in this matter.

18     (Proceedings recessed briefly.)

19          THE CLERK:  Now calling Criminal Matter

20 25-00012-2, United States versus Beckman.

21     Please state appearances for the record, beginning with

22 the Government.

23          MR. O'BRIEN:  Good morning again, your Honor.

24 Patrick O'Brien for the United States.

25          THE COURT:  Good morning.

1          MS. FALK:  Good morning, your Honor.  I'm just
2   standing in today for Ms. Lau.  I'm (indiscernible) qualify
3   ultimately, but she was arrested very unexpectedly this
4   morning, and obviously did not have time to retain an
5   attorney before court today, so I'm going to be standing in.
6          THE COURT:  Good morning.
7      Good morning, Ms. Lau.
8          DEFENDANT LAU:  Good morning.
9          MS. JOHNSON:  Good morning, your Honor.  Allyse
10  Johnson, U.S. Pretrial.
11         THE COURT:  Good morning.
12     I mean, if Defendant doesn't qualify under the Criminal
13  Justice Act, is the Government okay going forward with an
14  arraignment, or should we wait, put this over and wait until
15  she retains counsel?
16         MR. O'BRIEN:  So, your Honor, I'm fine going
17  forward today, and I think Ms. Falk is able to stand in for
18  purposes of today, because the Government does not want to
19  hold Ms. Lau in detention, but does believe there should be
20  some conditions of release that she agrees to today, and so
21  I think it's appropriate to certainly at least get to that
22  point.
23     If she wants to wait to enter a plea, I don't have a
24  problem with that.  We should advise her of the charges.
25  She should be advised of her rights.  So I think we should

1 just go forward, but, if Ms. Falk has a different view --

2         MS. FALK:  I agree.  I don't want her held in

3 custody.  It's going to be much harder for her to find an

4 attorney as well if she's in custody.

5         THE COURT:  Just so I'm clear, everybody waives

6 any objection to proceeding in this matter?  Then we'll go

7 forward.

8         MS. FALK:  I spoke to Ms. Lau at length in lockup

9 today.  She definitely wants to go forward, and she would

10 waive any prejudice.

11         MR. O'BRIEN:  I'm not going to come back and say

12 that she shouldn't have had Ms. Falk at this point.

13         THE COURT:  I just want to make that clear on the

14 record.

15         MS. FALK:  Okay.

16         THE COURT:  Okay.  So -- and does the Defendant go

17 by "Ms. Beckman" or "Ms. Lau"?  I want to make sure.

18         MS. FALK:  My understanding is she goes by "Ms.

19 Lau," but I will ask.

20         DEFENDANT LAU:  I do.  I go by Ms. Lau.

21         THE COURT:  Okay.  So, Ms. Lau, we're here for

22 what's called an "initial appearance" on an indictment.  So,

23 first, for the record, please state your full true name.

24         DEFENDANT LAU:  Valerie Lau Beckman.

25         THE COURT:  Sorry.  Say it again.

1    DEFENDANT LAU:  Valerie Lau Beckman.

2    THE COURT:  And how old are you, ma'am?

3    DEFENDANT LAU:  I'm 38.

4    THE COURT:  Okay.  You're here today in this court

5  because a grand jury sitting in this district has returned

6  an indictment charging you with some felony offenses.

7    Ms. Falk, do you have a copy of the indictment?

8    MS. FALK:  Yes, we do.

9    THE COURT:  Okay.  The purpose of the hearing

10  today is to advise you of the charges contained in the

11  indictment, the potential penalties the charges carry,

12  advise you of some of your constitutional rights, determine

13  if you intend to retain counsel or if you're eligible for

14  the appointment of counsel, set some further hearings in the

15  case, and then make a decision about whether you'd be

16  released on bond or detained pending resolution of your

17  case.

18    So, first, you have a right to remain silent.  You're

19  not required to make any statement. If you have made a

20  statement, you're not required to say anything more.  If you

21  start to make a statement, you may stop at any time.

22    You may consult with your attorney before any

23  questioning, and you may have an attorney present during any

24  questioning.  Because you have a right not to make a

25  statement, any statement that you do make other than to your

1 lawyer may be used against you.

2      Do you understand your right to silence?

3           DEFENDANT LAU:  I do.

4           THE COURT:  You also have the right to an attorney

5 in this case.  You have the right to be represented by that

6 attorney during all stages of the case, both in court and

7 out of court.  You have a right to have that attorney with

8 you during any questioning by authorities.  You have a right

9 to retain an attorney of your own choosing, but, if you

10 can't afford one, I will appoint one to represent you at no

11 cost to you.

12      Do you understand your right to an attorney?

13           DEFENDANT LAU:  I do.

14           THE COURT:  Okay.  And, as we discussed on the

15 record previously, I'm going to provisionally appoint Ms.

16 Falk to represent you solely for purposes of today, until

17 you can find your own -- I assume you're going to find

18 privately retained counsel, correct?

19           DEFENDANT LAU:  Yes.

20           THE COURT:  Okay.  All right.  I don't want to

21 make any assumptions about citizenship.  Is the Defendant a

22 U.S. citizen?

23           MS. FALK:  I actually (indiscernible) that.

24           DEFENDANT LAU:  Yes, I am.

25           THE COURT:  Okay.  So, turning to the indictment,

as I said, it charges you with a number of criminal

offenses.

     Mr. O'Brien, why don't you go ahead and summarize the

charges and maximum penalties.

          MR. O'BRIEN:  Yes, your Honor.  Ms. Lau is charged

with several violations.  First, counts four through nine

charge violations of Title 18, United States Code Section

1343, wire fraud, and counts 10 and 11 charge violations of

Title 18, United States Code Section 1349, conspiracy to

commit wire fraud.  The maximum penalties per count, for all

of those counts, is 20 years' imprisonment, a $250,000 fine,

or twice the gross pecuniary gain or loss from the offense,

three years of supervised release, a $100 special

assessment, restitution, and forfeiture.

     Counts 13 and 14 of the indictment charge violations of

Title 15, United States Code Sections 78j(b) and 78f(f), and

Title 17, Code of Federal Regulations Section 240.10b-5,

securities fraud.  The maximum penalties per count are 20

years' imprisonment, a $5,000,000 fine, three years of

supervised release, a $100 special assessment, restitution,

and forfeiture.

     Count 15 charges a violation of of Title 18, United

States Code Section 371, conspiracy to commit securities

fraud.  The maximum penalties are five years' imprisonment,

a $250,000 fine, three years of supervised release, $100

special assessment, restitution, and forfeiture.

Count 16 charges a violation of Title 18, United States Code Section 1349, conspiracy to commit bank fraud. The maximum penalties are 30 years' imprisonment, a $1,000,000 fine, five years of supervised release, and a $100 special assessment, restitution, and forfeiture.

Count 17 charges a violation of Title 18, United States Code Section 1014, false statements to a bank or other federally insured institution. The maximum penalties are 30 years' imprisonment, a $1,000,000 fine, five years of supervised release, a $100 special assessment, restitution, and forfeiture.

Count 18 charges a violation of Title 18, United States Code Section 1957, engaging in monetary transactions and property derived from specified unlawful activity. The maximum penalties are 10 years' imprisonment, a $250,000 fine or twice the amount of the criminally derived property involved in the transaction, three years of supervised release, a $100 special assessment, restitution, and forfeiture.

Count 19 charges a violation of Title 18, United States Code Section 1028A, aggravated identity theft. The minimum penalty for this count is a mandatory minimum prison term of two years that must be consecutive to any other term of imprisonment imposed on the person under any other provision

of law, except the Court has discretion to impose concurrent sentences only with another term of imprisonment that is imposed by the Court at the same time on that person for an additional violation of this section.

The other maximum penalties are a $250,000 fine, three years of supervised release, a $100 special assessment, restitution, and forfeiture.

Count 25 charges a violation of Title 18, United States Code Section 1512(c)(1), obstruction of justice.  The maximum penalties are 20 years' imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment.

THE COURT:  Okay.  Ms. Lau, do you understand the charges against you and the maximum penalties you face?

DEFENDANT LAU:  Yes.

THE COURT:  All right.  So we didn't do this.  Mr. Beckman, is there a motion to unseal the case?

MR. O'BRIEN:  Yes, your Honor.  The motion that was made in the Co-Defendant's case also is made here to unseal the case, except for the indictment, which will remain partially sealed.  There will be a redacted copy of the indictment redacting certain street numbers and names, and the zip code.

THE COURT:  And that corrected redacted version will be filed today?

1          MR. O'BRIEN:  Yes, your Honor.

2          THE COURT:  Okay.  Ms. Falk, any objection to that

3 procedure?

4          MS. FALK:  No, your Honor.

5          THE COURT:  All right.  So granted.

6     And, as we discussed, Ms. Falk, at this point, since

7 you're not the Defendant's counsel for the rest of the case,

8 are you in a position to waive formal reading or enter a

9 plea, or should we wait until (indiscernible) counsel?

10          MS. FALK:  I am in a position.  I have -- I'm

11 happy to enter a not guilty plea on her behalf.  I did

12 discuss this all with her this morning, and she would just

13 like to go ahead and enter a not guilty plea, have that be

14 put on the record, and then just put this over for two weeks

15 to try to find an attorney.

16          THE COURT:  Okay.  So, first, do you waive formal

17 reading of the indictment on behalf of Ms. Lau?

18          MS. FALK:  Yes, I do.

19          THE COURT:  Okay.  And let's formally enter the

20 plea on behalf of --

21          MS. FALK:  Not guilty to all charges, and the

22 forfeiture allegation is denied.

23          THE COURT:  Plea of not guilty on the charges in

24 the indictment and denial of forfeiture will be entered.

25 The record will reflect the Defendant has been arraigned on

the indictment.

So, pursuant to the Due Process Protection Act, counsel for the Government is reminded of their obligations, pursuant to <u>Brady v. Maryland</u> and its progeny, to disclose material that is favorable to the Defendant and material either to the Defendant's guilt or punishment.

The failure to do so in a timely manner may result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, or any other remedy that is just under the circumstances.

Mr. O'Brien, does the Government acknowledge those duties?

MR. O'BRIEN: Yes, your Honor.

THE COURT: Okay. I think you previewed this. Is there a release plan?

MR. O'BRIEN: Yes, your Honor. It would be the same conditions, with the modification that I made in Mr. Beckman's case to have pretrial supervision. We will shift over where the $1,000,000 figure is in the bond form, and the plan would be to come back on February 10th, your Honor, for the next appearance in front of your Honor.

MS. FALK: So, if I could just have a minute with her?

All right, your Honor. I think we're prepared to go

1 forward if the Court wants to review the bond.  It's very

2 similar to the last bond, and I did not check -- I forgot to

3 check the Pretrial Services box.

4          UNIDENTIFIED SPEAKER:  I'm sorry.

5          MS. FALK:  Okay.  That's fine.

6          Is she going to be released from here?  Has she

7 already been processed?

8          UNIDENTIFIED SPEAKER:  No, and she'll have to go

9 back up to 20 and do her release.

10          THE COURT:  Again, with the parties' consent, I'm

11 going to move the million dollars to the unsecured bond box

12 and take it out of the personal recognizance box.

13          MR. O'BRIEN:  Yes, your Honor.  Thank you.  My

14 mistake.

15          THE COURT:  Okay.  Ms. Lau, the parties have

16 worked out a release plan and certain conditions for your

17 release.  I want to go over those with you in detail so you

18 understand what is going on here.

19      So, first, you're posting what's called a "secured

20 bond" of a million dollars, which will be secured against

21 the property at your residence at 3877-3879 Jackson Street.

22 So do you understand that?

23          DEFENDANT LAU:  Yes.

24          THE COURT:  Okay.  And what that means is if,

25 while you're on release, you happen to violate any terms of

1  your conditions, the Government has the option to file a

2  motion with the Court seeking forfeiture of the bond up to

3  the full amount, plus interest and costs, so it could be

4  more than a million dollars, and so this secured bond is a

5  financial commitment for you to comply with all your

6  conditions of release.

7      Do you understand that?

8          DEFENDANT LAU:  I do.

9          THE COURT:  And I didn't ask this on the record.

10 Do you know if you have more than a million dollars in

11 equity in that residence?

12         DEFENDANT LAU:  I don't.  I don't know.

13         MS. FALK:  So what I think from reading the

14 indictment -- Mr. O'Brien can correct me if I'm wrong -- is

15 it was purchased in cash.

16         MR. O'BRIEN:  It was, your Honor.  There was then

17 a loan taken out, but I believe there's more than $2,000,000

18 of equity in the house.

19         THE COURT:  Okay.  All right.  With that

20 representation, I'll go forward.

21     And so your current residence, just so I'm clear, is

22 3877-3879 Jackson Street in San Francisco?

23         DEFENDANT LAU:  Yes.

24         THE COURT:  And your current phone number is

25 (818) 271-8800?

1          DEFENDANT LAU:  Yes.

2          THE COURT:  So I'm going to go through the

3 detailed conditions of your release, just to make sure you

4 understand them all.

5     So, first, the Defendant must appear at all

6 proceedings, as ordered by the Court, and must surrender for

7 service of any sentence imposed.

8     The Defendant must not commit any federal, state, or

9 local crime.

10     The Defendant must not harass, threaten, intimidate,

11 injure, tamper with, or retaliate against any witness,

12 victim, informant, juror, or officer of the Court, or

13 obstruct any criminal investigation.

14     The Defendant must submit to supervision by Pretrial

15 Services, and must report immediately upon release and

16 thereafter as directed by Pretrial Services, and we'll get

17 you that information in a second.

18     The Defendant must surrender any passports or other

19 travel documents to Pretrial Services by January 23rd, 2025,

20 and must not apply for other passports or travel documents.

21     Mr. O'Brien, did the Government seize already the

22 Defendant's passport?

23          MR. O'BRIEN:  I believe so, your Honor, and the

24 FBI will make that available to Pretrial Services.

25          THE COURT:  The Defendant must not possess any

1 firearm, destructive device, or other dangerous weapon.

2     The Defendant must not use alcohol to excess, and must

3 not use or possess any narcotic or other controlled

4 substance without a legal prescription.

5     The Defendant must have no contact, directly or

6 indirectly, with any co-defendant outside of the presence of

7 counsel.

8     The Defendant must not change residence or telephone

9 number without prior approval of Pretrial Services, and we

10 went through your address and phone number.

11     The Defendant must comply with the following location

12 restrictions.  The Defendant must not travel outside of the

13 Northern District of California, and there's a map in the

14 bond form that identifies what counties of California that

15 comprises the Northern District.

16     So, Ms. Lau, do you understand all those conditions of

17 release?

18         DEFENDANT LAU:  I do.

19         MR. O'BRIEN:  Your Honor, briefly, I'm just

20 noticing that the Defendant must now have no contact,

21 directly or indirectly, with any co-defendant outside the

22 presence of counsel.  That should be limited to about this

23 case.

24         MS. FALK:  I thought you put that in there.

25         MR. O'BRIEN:  Yes.  So I think that is missing

1  there, and to the extent it's missing in Mr. Beckman's, I'll

2  make that change with Mr. Joiner and submit something to the

3  Court.

4          THE COURT:  Okay.  So I've edited the conditions

5  to say:

6              "Defendant must have no contact,

7              directly or indirectly, with any

8              co-defendant outside of the presence of

9              counsel about this case."

10          MS. FALK:  Okay.  Because they share a trial, and

11  so it would be pretty challenging.

12          THE COURT:  I did ask in the previous hearing,

13  logistically, how that works, and it's just as written.

14          MR. O'BRIEN:  Yes, and I apologize, your Honor.

15  That -- I thought that's what it said, and it's -- my

16  apologies.

17          THE COURT:  Okay.  So everybody is fine with those

18  edits?

19          MS. FALK:  Yes.

20          THE COURT:  Okay.  So, with those edits, Ms. Lau,

21  do you understand the terms of your conditions of release?

22          DEFENDANT LAU:  Yes, I do.

23          THE COURT:  Okay.  So I'm going to stress a couple

24  things.  So, first of all, failure to appear in court is a

25  crime, separately, under 18 U.S.C. Section 3146, and that

1 could lead to a sentence of imprisonment.

2     As I said, committing -- you can't be committing any

3 crimes while on release, but, of course, committing a crime

4 on release could lead to more severe punishments than

5 ordinarily.

6     It is a crime to try to influence a juror, threaten or

7 attempt to bribe a witness, retaliate against anyone for

8 providing information about this case, or otherwise obstruct

9 justice.

10     You understand all that?

11         DEFENDANT LAU:  I do.

12         THE COURT:  Okay.  All right.  So, last chance,

13 Government.  Any other edits to the bond form?

14         MR. O'BRIEN:  No, your Honor.  Thank you.

15         THE COURT:  Defense?

16         MS. FALK:  No, thanks.

17         THE COURT:  Pretrial?

18         MS. JOHNSON:  No, your Honor.

19         THE COURT:  Let's get this executed.

20         MS. FALK:  Your Honor, I did discuss with Ms.

21 Lau -- she does have a right to a trial in 70 days.  Given

22 that she doesn't have a lawyer, it's not advisable that she

23 would want to have a speedy trial at this exact moment.  So

24 I am signing an exclusion of time, to give her time to find

25 an attorney, and I did discuss that with her, that she would

1 need that time, and she's in agreement that she needs that

2 time.

3       THE COURT:  So, Ms. Lau, is this your signature on

4 the bond form?

5       DEFENDANT LAU:  Yes.

6       THE COURT:  Okay.  And you understand all the

7 conditions of your release, and you agreed to them before

8 you signed?

9       DEFENDANT LAU:  Yes.

10       THE COURT:  Okay.  I'm going to sign off on the

11 bond form.  All right.  Can I have a representation of the

12 Government as to the voluminous nature of discovery in this

13 case?

14       MR. O'BRIEN:  Yes, your Honor.

15       THE COURT:  Okay.  So I've been provided the

16 parties' stipulation to exclude time from January 23rd,

17 today, until February 10th, which is going to be our next

18 hearing, on the grounds that failure to grant a continuance

19 would deny the Defendant reasonable time to obtain counsel,

20 and, also, it's necessary for effective preparation, given

21 the representation as to the voluminous nature of discovery,

22 and I will sign the order.

23     Okay.  So let's set the next hearing for February 10th

24 at 2:00 p.m. for ID of counsel and status on the bond as

25 well.

1    MR. O'BRIEN:  Yes, your Honor.

2    THE COURT:  And I do want a post-bail report from

3 Pretrial for both this Defendant and the Co-Defendant.  I

4 forgot to say that on the record.

5    MS. JOHNSON:  Understood, your Honor.

6    THE COURT:  Okay.

7    MS. FALK:  And, your Honor, just so that I'm

8 clear, I'm not going to be participating in the post-bail

9 process, but I would recommend that she wait for her

10 attorney to be present for that interview.  I think that's

11 really important.

12    So, given that she's going to have to find somebody,

13 there may be a little delay in getting Pretrial an

14 interview, but I will let her know to have any attorney that

15 she hires call me, so I can make sure that they know to

16 contact Pretrial.

17    THE COURT:  Pretrial understands that?

18    MS. JOHNSON:  Yes, your Honor.

19    THE COURT:  All right.  Did you give the contact

20 info to the Defendant?

21    MS. JOHNSON:  I'll do that right now.

22    THE COURT:  Okay.  So, Ms. Lau, procedurally,

23 what's going to happen is you're going to go upstairs and

24 get out-processed on the 20th floor, and then, immediately

25 after that, you're going to be released, subject to all the

1  conditions we talked about.

2      Do I have your promise you're going to abide by all

3  your conditions of release?

4          DEFENDANT LAU:  I promise.

5          THE COURT:  All right.  And then, once you get

6  counsel lined up, then, with that counsel's schedule,

7  contact Pretrial Services with the schedule and interview.

8  Okay?

9          DEFENDANT LAU:  Okay.

10         MS. FALK:  And so today you're just going to go

11 over the conditions?  You're not going to interview her?

12         MS. JOHNSON:  That's correct.

13         THE COURT:  Okay.  So I'll process on 20.  Go to

14 Pretrial for that initial meeting, and then later set up an

15 interview with Pretrial with your counsel.

16     For the record, the next hearing is set before me, for

17 February 10th at 2:00 p.m., for ID of counsel and status on

18 the bond.

19         MS. FALK:  February 10th?  Sorry.

20         THE COURT:  Yes.

21         MS. FALK:  2/10/25 for ID counsel.

22         THE COURT:  Anything further from the Government?

23         MR. O'BRIEN:  No, your Honor.

24         THE COURT:  Okay.  Anything further from the

25 defense?

1            MS. FALK:  No, your Honor.

2            THE COURT:  Anything further from Pretrial?

3            MS. JOHNSON:  No, your Honor.

4            THE COURT:  All right.  So, Ms. Lau, you are

5    remanded to the custody of the U.S. Marshals for purposes of

6    out-processing, and, as I said, you'll be released subject

7    to all your conditions of your bond.  Okay?  And then we're

8    adjourned until the next hearing, which will be February

9    10th at 2:00 p.m., here.

10           MR. O'BRIEN:  Thank you, your Honor.

11           THE COURT:  Okay.  Thank you.

12           THE CLERK:  We're off the record in this matter.

13      (Proceedings adjourned at 12:05 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE OF TRANSCRIBER</u>

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.



Echo Reporting, Inc., Transcriber

Thursday, February 27, 2025